## Pennsylvania Fire Ins. Co. v. Thomason.

Feb. 5, 1943.

Frank M. Drake, Gordon, Gordon & Moore and Abner Johnston, for appellant.

Charles G. Franklin for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

The appellant and defendant below, the Pennsylvania Fire Insurance Company, hereinafter referred to as the company, on April 10, 1940, issued a policy to appellee and plaintiff below, Mrs. Jessie Franklin Thomason, insuring her home for $800 and its contents for $200 against loss by fire for a term of one year. The house and contents were totally burned on the early morning of April 3, 1941, and Mrs. Thomason sued the company on the policy. The jury returned a verdict for $950 in her favor and from the judgment entered thereon the company appeals. It insists that the court should have directed a verdict in its favor because: (a) Plaintiff intentionally and fraudulently included in her proof of loss property that was not in the dwelling, which under the provisions of the policy voided it; and (b) there was a failure of proof as to the value of the property burned.

The morning after the fire the company's local agent, Mr. Watt Morris, who had sold the policy to the plaintiff, told her in the presence of her husband that it would be necessary to furnish a list of her household effects which were destroyed before she could collect the insurance. Mrs. Thomason could neither read nor write, although she could sign her name, therefore her husband wrote out the list and she signed it. He included there-

in a living-room suit costing $110 and a rug costing $30, neither of which was in the house when it burned.

The petition alleged plaintiff had complied with all the terms of the policy, had made proof of loss and that the company was indebted to her in the sum of $1000, the amount of the policy and the value of the house and its contents. The first paragraph of the answer denied "that by reason of the facts alleged in the petition, said defendant is indebted to the plaintiff for $1000, or any sum." Paragraph 2 averred plaintiff feloniously burned the house. Paragraph 3 alleged plaintiff deliberately and fraudulently included items in her claim which she knew were not in the house when it burned which caused the policy to be voided under this provision thereof:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

By an amended petition it was alleged that the actual cash value of the house was $1000 and the contents $150 at the time of the fire. An amended answer set out the property fraudulently included in the plaintiff's claim were a living-room suit $100, a rug $30 and a radio $80. A reply denied that the radio was not destroyed but admitted that the living-room suit and the rug were not burned, but denied that they were deliberately or fraudulently included in the list of property destroyed, and averred that they were included without the knowledge and consent of plaintiff and through error and inadvertence.

Provisions similar to the one above quoted have been held valid by this court, Kronenberg v. American Ins. Co., 229 Ky. 216, 16 S. W. (2d) 1028; World Fire & Marine Ins. Co. v. Tapp, 279 Ky. 423, 130 S. W. (2d) 848. Counsel are not in disagreement as to the law controlling this controversy and they admit the correct rule is as stated in New York Underwriters' Ins. Co. v. Mullins, 244 Ky. 788, 52 S. W. (2d) 697, on page 703:

"To vitiate a fire insurance policy, statements under

oath in proof of loss or the accompanying affidavit must be intentionally false and disclose a purpose fraudulently to overvalue or contain statements of items having no existence, and mere innocent mistake of the existence of items, or articles or exaggerated estimate of value, is insufficient.''

Only two witnesses testified, the plaintiff and the local agent of the company. Her testimony was to the effect that the radio was burned but the living-room suit and the rug were not; that she became hard pressed for money and had sold and delivered them a week or two before the fire to her sister-in-law for $20. Not being able to read or write, her husband made a list of the household effects destroyed and delivered it to Morris; that by mistake and inadvertence he included therein the living-room suit and the rug. On the morning of the fire soon after making the list as instructed by the defendant's agent, her husband took the proof of loss to the home of his mother and sister, who were to check it for accuracy. There were several persons gathered in his mother's home and he laid the list on the mantel and in the confusion forgot to submit it to his mother and sister before delivering it to defendant's local agent. Mrs. Thomason testified that she had no idea or intention of defrauding the company, but these articles appeared in the proof of loss on account of the mistake of her husband and because she was unable to read.

The fire occurred around 1 A. M., while plaintiff was spending the night with her sister-in-law and while Mr. Thomason was away from home looking for work. There is no evidence of arson. She admitted that a day or so before the fire she had sold in addition to the living-room suit and the rug several other household articles for considerably less than cost. The morning of the fire someone in the presence of plaintiff and her husband was looking through the debris to locate the springs of the sofa and she did not mention the fact that it was not in the house at the time of the fire but had been sold as a part of the living-room suit. Counsel for defendant strenuously argue in briefs that if this furniture had been inadvertently listed as burned that the plaintiff would have put her husband on the stand and proved that through mistake he listed it. Failure to call the husband as a witness is a circumstance from which the jury might have inferred he would not have supported his wife's

testimony, Insurance Co. of North America v. Creech Drug Store, 256 Ky. 56, 75 S. W. (2d) 552, but the fact that he did not testify was a matter for the jury's consideration.

Mrs. Thomason was not only illiterate, but she did not testify very intelligently. She was subjected to a most gruelling cross-examination as to where she bought various articles destroyed in the house, the price paid therefor and what was their cash value at the time of the fire. Some of these questions she could answer, others she could not. For instance, she had listed eleven window curtains at $10 and when she gave their value on the trial as $8 she was asked to explain the discrepancy, and replied that she could not. It is most difficult for anyone to value such property and the difference between $8 and $10 is not a great discrepancy, but she did not possess the ability to so answer. When she testified her sister-in-law visited her on the afternoon before the fire, she was asked whether they sat on the porch or in the house. When objection was made to that question, defense counsel stated it was asked as effecting her credibility. Mrs. Thomason became so confused that she testified she did not sign the list prepared by her husband, but admitted that she had previously stated under oath on an investigation of the fire that she had signed it. Although she was able to give the cash value at the time of the fire of only a few of her household articles, she did testify when defendant called her to the stand as its witness that their total value was $150. Person possessing far more intelligence than Mrs. Thomason might have difficulty in placing the cash value on various household articles with any degree of accuracy and probably could only value them as a whole as she did.

From the above recital of the evidence, it is obvious that the question should have been submitted to the jury under proper instruction whether the plaintiff intentionally and fraudulently overvalued the property destroyed, or intentionally and fraudulently listed the property in question as having been destroyed by fire, or whether the overvaluation and erroneous listing was through mistake or inadvertence. The court so instructed the jury and in substance followed the form set out in New York Underwriters' Ins. Co. v. Mullins, 244 Ky. 788, 52 S. W. (2d) 697, 703, and no complaint is made of the instructions given. The evidence supports the verdict and the

company's argument that it was entitled to a peremptory instruction is untenable.

Arel v. First Nat. Fire Ins. Co., 195 Mo. App. 165, 190 S. W. 78, relied upon by the company has no application. Arel deliberately and falsely listed a boiler in his proof of loss which had not been reached by the fire for the purpose of defrauding the insurance company. Nor does Atlas Assur. Co., etc., v. Hurst, 8 Cir., 11 F. (2d) 250, cited by the company's counsel, militate against what is written herein.

The judgment is affirmed.