No. 95-4101

Claude Patterson,                          *
                                           *
        Appellant,                         *
                                           *   Appeal from the United States
        v.          *                      District Court for the Eastern
                                           *   District of Missouri.
State Automobile Mutual                     *
Insurance Company,                          *
                                           *
        Appellee. *

                    Submitted: November 21, 1996

                    Filed: February 3, 1997

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,[1]
    District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

    A fire destroyed Claude Patterson's house in New Florence, Missouri,
in late 1989.  His insurance company, State Automobile Mutual Insurance,
denied his claim nine months later, contending that Mr. Patterson had
started the fire intentionally and had misrepresented the amount of his
losses.  Mr. Patterson sued.

    After a six-day trial, a jury found for the insurance company.
Mr. Patterson appeals, asserting that the trial court abused its discretion
in striking part of the testimony of one of Mr. Patterson's experts.
Mr. Patterson also argues that the jury

---

[1]The Honorable Andrew W. Bogue, United States District Judge
for the District of South Dakota, sitting by designation.

instruction on the insurance company's affirmative defense was flawed in several significant ways and that the insurance company failed to prove the materiality of any misrepresentations that Mr. Patterson allegedly made. We affirm the judgment of the trial court.[2]

## I.

One of Mr. Patterson's expert witnesses was an arson investigator for the St. Louis police department. The expert went to the scene one or two weeks after the fire and walked around "what was left" of the outside of the house, looking for any signs of the cause and origin of the fire. At that time, he was not able to determine the cause of the fire, and so he presumed it to be accidental. It was the expert's view, in addition, that if a person used five gallons of accelerant (as posited by at least one insurance company witness), the resulting explosion would either seriously injure or kill the person who spread the accelerant.

On a second trip some time later, the expert examined some of the metal beams in the debris to see if there had been any melting (because he had heard that "some people had indicated that there was melting of metal at the fire scene"; such melting would suggest the high temperatures common in a fire started by an accelerant). He cleaned and scraped several metal beams, removing exterior bubbles, which revealed what he considered to be a type of rust that characteristically appears when metal is subjected to continuous burning at more moderate temperatures. The expert also talked with the fire chief and two firefighters, all of whom told him that they had detected no odors of any accelerant in the fire.

---

[2]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

At trial, the expert testified about both of his trips to the site. The insurance company objected to the admission of the expert's testimony about his second trip there, arguing that Mr. Patterson's failure to advise the insurance company of that visit unfairly prejudiced its case and violated Fed. R. Civ. P. 26(e)(1); see also Fed. R. Civ. P. 26(a)(2)(C). The trial court agreed and instructed the jury to disregard "that portion of [the expert's] testimony that related to his second visit to the fire site ... where he performed the tests on the steel beam relative to melting and had an opinion on the melting situation. Also, his discussions with the firefighters and any opinions based on those from his second visit to the scene."

Mr. Patterson contends that the trial court abused its discretion, see, e.g., Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995), cert. denied, 116 S. Ct. 1984 (1995), in striking the expert's testimony relative to his second visit to the site. We see no abuse of discretion: the rules explicitly authorize the exclusion of testimony in the circumstances presented here. See Fed. R. Civ. P. 37(c)(1); see also Sylla-Sawdon, 47 F.3d at 283-84, and Iowa-Mo Enterprises, Inc. v. Avren, 639 F.2d 443, 446-47 (8th Cir. 1981).

The jury was still entitled, moreover, to consider the expert's testimony that he could not reach a conclusion about the cause or origin of the fire, and that he therefore characterized it as being accidental in nature. The jury was also still entitled to consider the expert's testimony about the deadly nature of the explosion that would have resulted if, as the insurance company suggested, five gallons of an accelerant had been used in setting the fire. That testimony alone tended to refute the insurance company's version of events. Additional testimony about the expert's tests on the metal beams and his conversations with several firefighters would have been more or less cumulative, in

our view, since the essence of the expert's testimony -- with and without the included portion -- was that the fire was not deliberately set.  We therefore hold that even if the trial court's ruling could be considered error, it was harmless.

## II.

The insurance policy in this case denies "coverage" for any insured who has "intentionally concealed or misrepresented any material fact or circumstance" or "made false statements or engaged in fraudulent conduct" "relating to this insurance."  The trial court instructed the jury, therefore, that the verdict had to be for the insurance company if the jurors believed that Mr. Patterson "intentionally concealed or misrepresented any material fact or circumstance as to the cause and origin of the fire; ... the value of the allegedly damaged personal property; ... the existence of the allegedly damaged personal property; or ... his claim for additional living expenses."

Mr. Patterson contends that the instruction incorrectly failed to include a requirement that the insurance company have relied to its detriment on (have been prejudiced by) any misrepresentations that he allegedly made.  He also asserts that the instruction contravenes both public policy and the language of the specific insurance policy in this case by allowing total forfeiture of benefits because of a material misrepresentation with regard to only one of the several types of coverage provided by the policy.

With respect to the issue of detrimental reliance, we have found no cases from the Missouri state courts dealing with this question in circumstances involving alleged misrepresentations about the cause or origin of a fire, in proofs of loss, or as to additional living expenses. Our court, however, has held at least twice that when an insurance company challenges a proof of loss as fraudulent, and thus in violation of terms in the policy

prohibiting intentional misrepresentations and fraudulent conduct, under Missouri law the insurance company does not have to show its own detrimental reliance on the proof of loss.  See General Casualty Insurance Companies v. Holst Radiator Co., 88 F.3d 670, 672 (8th Cir. 1996), and Vitale v. Aetna Casualty and Surety Co., 814 F.2d 1242, 1251 (8th Cir. 1987).  We see no reason why this principle should not apply as well to circumstances involving alleged misrepresentations about the cause or origin of a fire and as to additional living expenses, since its basis is the policy language itself.  See General Casualty Insurance Companies, 88 F.3d at 671-72, and Vitale, 814 F.2d at 1251.  The policy language in this case says nothing about any requirement for detrimental reliance by the insurance company.  We therefore reject Mr. Patterson's argument on the issue of detrimental reliance.

Mr. Patterson never made his public policy argument or the contract interpretation argument in the trial court.  He contends nonetheless that because the instruction allowed forfeiture of all benefits even if the jury found that Mr. Patterson made a material misrepresentation with regard to only one type of coverage provided by the policy, the instruction was plain error.  We disagree.

For one thing, both federal and state courts applying Missouri law have specifically stated that Missouri common law permits forfeiture under circumstances like the ones presented in this case.  See, e.g., Vitale, 814 F.2d at 1247, and Childers v. State Farm Fire and Casualty Co., 799 S.W.2d 138, 141 (Mo. Ct. App. 1990).  In addition, both federal and state courts have allowed this kind of forfeiture based on the language contained in particular insurance policies.  See, e.g., Vitale, 814 F.2d at 1247; Farm Bureau Town and Country Insurance Co. v. Crain, 731 S.W.2d 866, 875 (Mo. Ct. App. 1987); Arel v. First National Fire Insurance Co., 190 S.W. 78, 80 (Mo. Ct. App. 1916); and Hall v. Western Underwriters' Association, 81 S.W. 227, 227 (Mo. Ct.

App. 1904).  We therefore reject Mr. Patterson's arguments with respect to forfeiture.

### III.

Last, Mr. Patterson contends that the insurance company failed to prove the materiality of any misrepresentations that he allegedly made. We have read with care the transcript of the
six-day trial.  The evidence was more than sufficient to prove the materiality of the statements that the insurance company offered as misrepresentations made by Mr. Patterson.

### IV.

For the reasons stated, we affirm the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.